H. Lissner Company, Inc. v. Commissioner.
H. Lissner Co., Inc. v. Commissioner
Docket No. 12275.
United States Tax Court
1948 Tax Ct. Memo LEXIS 102; 7 T.C.M. (CCH) 616; T.C.M. (RIA) 48160; August 30, 1948
*102 Petitioner, pursuant to an agreement dated October 4, 1938, purchased 6,000 shares of its capital stock which it subsequently retired. The purchase price of $660,000 was to be satisfied by a payment of $300,000 on execution of the agreement and the remainder was to be paid in three installments. The deferred installments bore interest at the rate of 4 per cent per annum from July 1, 1938. Held, the interest paid by petitioner as a result of this transaction in the fiscal year ending October 31, 1939, in the amount of $12,788.88, was abnormal only in amount under section 11 (b) (1) (J) (ii) and was not an abnormal deduction as to class under section 711 (b) (1) (J) (i) of the Internal Revenue Code. Bernard Weiss, Esq., 136 E. 57th St., New York, N. Y., for the petitioner. William B. Springer, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding arises from the disallowance of petitioner's claim for a refund of excess profits tax for the fiscal year ended October 31, 1942. Petitioner claims that it is entitled to a refund of excess profits tax in the amount of $9,687.08 instead of $1,239.44 as determined *103 by respondent. The sole question presented for determination herein is whether interest in the amount of $12,788.88, paid during the fiscal year ended October 31, 1939, and incurred in connection with the reacquisition of shares of petitioner's capital stock, is an abnormal deduction as to class under section 711 (b) (1) (J) (i) of the Internal Revenue Code and should therefore be disallowed in computing the excess profits tax net income for the fiscal year ended October 31, 1939, and the resulting excess profits credit for the taxable year ended October 31, 1942. Respondent has conceded that the total deductions for interest in the fiscal year ended October 31, 1939, are abnormal as to amount under section 711 (b) (1) (J) (ii) and that the expenditure by petitioner of $2,500 for legal fees in connection with the purchase of stock was not a proper deduction from income in that year. Petitioner has waived its alternative claim under section 711 (b) (1) (J) (ii) with respect to the legal expenses of $2,500. Findings of Fact Petitioner herein, the H. Lissner Company, Inc., is a corporation organized under the laws of Delaware with offices at 1150 Broadway, *104 New York, N. Y., and engaged in the manufacture of men's trousers. Petitioner's income, declared value excess profits tax and excess profits tax returns for the fiscal year ended October 31, 1942, were filed with the collector of internal revenue for the third district of New York on or before January 15, 1943. Petitioner keeps its books and records, and files its tax returns on the accrual basis. Herman Lissner, the principal stockholder in petitioner, died on February 26, 1938. The stockholders of record on that date and the number of shares held by each were: Herman Lissner
6,000 shares
Edward I. Levy
1,500 shares
Milton S. Frank
1,500 shares
In an agreement entered into in May, 1935, by Lissner, Levy, and Frank, owners of all of petitioner's outstanding stock, it was provided that in case of the death of any of the parties thereto the corporation should be liquidated unless the surviving parties exercised an option set out in the agreement to purchase the stock held by the decedent. This agreement was in existence at the date of Herman Lissner's death and had never been canceled or superseded on that date but the terms of the agreement were never carried *105 out. Neither this nor any other agreement in existence at the time of Lissner's death obligated the petitioner to purchase his stock. The surviving stockholders, Levy and Frank, were unable to reach an agreement with the executor of the estate of Lissner under the terms of the May, 1935, agreement. Faced with the alternative of liquidation, the petitioner entered into an agreement with the executors on October 4, 1938, whereby the petitioner purchased for $660,000 the 6,000 shares of its capital stock formerly held by Lissner. At that time petitioner had cash balances aggregating $557,450.41. Payment for the stock was agreed to be made as follows: $300,000
on execution of the agreement
$100,000
on July 2, 1939
$100,000
on January 2, 1940
$160,000
on July 2, 1940.
The deferred installments were to bear interest at the rate of four per cent per annum from July 1, 1938. Petitioner, retired the 6,000 shares so purchased and such shares have never been reissued. The petitioner had never before purchased and retired any of its capital stock. The following payments were made to liquidate the indebtedness to the estate of Herman Lissner under the stock purchase *106 agreement: October 4, 1938
$300,000.00
June 15, 1939
100,000.00
October 10, 1939
50,000.00
January 2, 1940
50,000.00
June 10, 1940
60,000.00
Pursuant to an agreement dated August 8, 1940, the balance of $100,000 owing by petitioner to the estate of Herman Lissner remained as a loan to the corporation bearing interest at two per cent per annum. This loan was ultimately paid to Gerda Lissner, beneficiary, on June 30, 1945. In connection with the acquisition of the stock, petitioner paid to Oscar Lewis of the law firm of Lewis, Marks, & Kantor, for legal services the sum of $2,500. The amounts deducted as interest on petitioner's tax returns and the nature of the expenses deducted as interest for the fiscal years ended October 31, 1935, 1936, 1937, 1938, 1939, and 1942 are as follows: Amount De-
Anticipations
ducted as
Interest to
and Discounts
Collector of
Year
Interest on
Estate of
Interest
Allowed
Int. Rev. and
Ended
Return
Herman Lissner
on Loans
Customers
Misc. Interest
10-31-35
$ 4,695.63
$1,219.42
$3,129.64
$346.57
10-31-36
1,172.26
1,066.10
106.16
10-31-37
1,325.51
1,323.13
2.38
10-31-38
6,257.43
$ 4,800.00
355.24
1,102.19
10-31-39
13,427.81
12,788.88
571.55
67.38
10-31-42
9,310.00
2,000.00
4,042.49
3,212.19
55.32
*107 The interest accrued and paid to the estate of Herman Lissner was kept in a separate account apart from all other interest on petitioner's books of account. The amounts deducted as interest by petitioner in its returns for 1935, 1938, 1939, and 1942 included items entered in its books as "Anticipations and Discounts Allowed Customers". These sums represented cash discounts allowed customers for prepaying their invoices. The abnormality or excess of petitioner's interest deductions was not a consequence of an increase in the gross income of petitioner or a decrease in the amount of some other deduction in its base period, nor was it a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by petitioner. The amount of $12,788.88 expended by the petitioner as interest during the fiscal year ended October 31, 1939, was not an abnormal deduction as to class under section 711 (b) (1) (J) (i) of the Internal Revenue Code. Opinion ARUNDELL, Judge: The sole issue herein is whether the interest accrued and paid by the petitioner in connection with the purchase and retirement of 6,000 shares of its capital *108 stock held by the estate of Herman Lissner is separate as to class under the provisions of section 711 (b) (1) (J) (i) * of the Internal Revenue Code from other interest payments made in the regular course of petitioner's business operations and consequently should be disallowed in computing the excess profits credit for 1942. *109 The question before us is not one of first impression. It was dealt with specifically in Arrow-Hart & Hegeman Electric Co., 7 T.C. 1350, in which case we held that interest paid on money borrowed from an insurance company for the purpose of purchasing and retiring preferred stock was not to be placed in a different class from the interest paid on loans made in connection with current business operations. We pointed out that the purposes for which loans are made usually are different but that the interest paid on one business loan does not differ in class from interest paid on another. This principle was followed in a subsequent decision of this Court in Oaklawn Jockey Club, 8 T.C. 1128. We can find no fundamental distinction between the petitioner's payments of interest on the unpaid balance of the purchase price of its common stock and the situation in the Arrow-Hart case where that company paid interest on funds borrowed and used for the purchase of its preferred stock. On the authority of the Arrow-Hart and Oaklawn Jockey Club cases, it is our opinion that respondent did not err in holding that the interest deductions were not abnormal as to class. *110 Respondent has conceded on brief that the total deductions of interest in the fiscal year ended October 31, 1939, are abnormal as to amount under section 711 (b) (1) (J) (ii), and that effect thereto will be given under Rule 50. Counsel for petitioner in his reply brief states that counsel for respondent has also agreed that in computing the amount of such abnormal interest, "Anticipations and Discounts Allowed Customers" will not be treated as interest. We do not find this concession in terms in respondent's brief, but be that as it may, it is our opinion that the discount items, although included by petitioner as interest in his returns for the various years, in fact do not constitute interest expense and consequently should be excluded as interest in the recomputation under Rule 50. Other concessions made by the parties will also be given effect in the final settlement. Decision will be entered under Rule 50. Footnotes
*. SEC. 711. EXCESS PROFITS NET INCOME. * * *
(b) Taxable Years in Base Period. - (1) General Rule and Adjustments. - The excess profits net income for any taxable year subject to the Revenue Act of 1936 shall be the normal-tax net income, as defined in section 13 (a) of such Act; and for any other taxable year beginning after December 31, 1937, and before January 1, 1940, shall be the specialclass net income, as defined in section 14 (a) of the applicable revenue law. In either case the following adjustments shall be made * * *: (J) Abnormal Deductions. - Under regulations prescribed by the Commissioner, with the approval of the Secretary, for the determination, for the purposes of this subparagraph, of the classification of deductions - (i) Deductions of any class shall not be allowed if deductions of such class were abnormal for the taxpayer, and (ii) If the class of deductions was normal for the taxpayer, but the deductions of such class were in excess of 125 per centum of the average amount of deductions of such class for the four previous taxable years, they shall be disallowed in an amount equal to such excess.↩